IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| MILTON DAVIS, individually and on behalf of all others similarly situated, | Case No.: 2:21-cv-02279 |
| *Plaintiff*, | Judge Colin S. Bruce |
| v. | |
| WIRCO, INC. | Magistrate Eric I. Long |
| *Defendant*. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR AND MEMORANDUM IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.      INTRODUCTION**

Named Plaintiff Milton Davis individually and on behalf of a class of 503 participating Settlement Class Members ("Plaintiffs"), by and through undersigned counsel, moves for final approval of the Parties' settlement of Plaintiffs' claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. The Parties' settlement of this Rule 23 class action is fair, reasonable, and adequate under the governing legal standards and satisfies all the criteria for final approval. Named Plaintiff respectfully requests the Court: (1) grant final approval of the Class Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit 1, including the releases of claims as set forth therein; and (2) enter the Proposed Final Approval Order, attached as Exhibit 2.[1]

On March 23, 2023, the Court took the first step in the settlement approval process by entering preliminary approval of the Parties' Settlement Agreement; certifying the Settlement Class as set forth in Paragraph 37 of the Settlement Agreement (the "Settlement Class") pursuant

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Settlement Agreement

0

to Federal Rule of Civil Procedure 23; appointing the attorneys from Stephan Zouras, LLP and Romanucci & Blandin, LLC as Class Counsel; appointing Named Plaintiff Milton Davis as Class Representative; appointing Analytics Consulting, LLC ("Analytics") as Settlement Administrator; directing that Notice be mailed to the Settlement Class; and setting a date for the Final Approval Hearing. *See* Exhibit 3, Preliminary Approval Order.

The Settlement Class Members have been notified of the terms of the Settlement, including the monetary relief, the allocation, and their right to object to or opt out of the Settlement. *See* Exhibit 4, Declaration of Shari Lynn Grayson ("Admin Decl."), ¶¶ 5-6; *see also* Exhibit A to Admin. Decl. ("Class Notice"). No Class Members have objected to the settlement and only one chose to exclude himself. Admin Decl. ¶¶ 13-14; *see also* Exhibit 5, Affidavit of Catherine Mitchell ("Mitchell Aff.") ¶ 17. With such overwhelming support for the Settlement and for the reasons stated below, the Court should grant final approval and enter a final judgment.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Though Plaintiff detailed the case background in his preliminary approval motion (Dkt. 31), it is set forth below for ease of reference. Plaintiff filed his putative Class Action Complaint in the Circuit Court of the Sixth Judicial District, Champaign County on October 1, 2021, alleging that Defendant utilizes biometric timekeeping devices at its facilities in Illinois and requires its employees to use the devices when clocking into and out of work but violated BIPA by: (1) failing to inform individuals in writing that it would capture, collect, store, use, and disseminate biometric data before doing so; (2) failing to obtain a written release for the capture of biometric data prior to such capture; (3) failing to inform individuals in writing of the specific purpose and length of time for which biometric data is captured; and (4) failing to develop and adhere to a publicly available retention schedule and guidelines for permanently destroying biometric data.

1

On November 15, 2021, Defendant filed a Notice of Removal in the United States District Court for the Central District of Illinois (Dkt. No. 1), where it was assigned to the Honorable Colin S. Bruce before being reassigned to Magistrate Eric I. Long, where it remains proceeding. Wirco filed an answer and affirmative defenses to Plaintiff's Complaint on December 15, 2021. (Dkt. No. 21). On December 16, 2021, a discovery schedule was entered.

On January 7, 2022, the Parties exchanged Rule 26 Initial Disclosures. For the ensuing four months, both Parties served written discovery requests, exchanged some written discovery responses and documents, and participated in numerous Rule 37 conference calls regarding outstanding discovery. Also during this time, and in an effort to reach a resolution of this matter, Defendant provided Plaintiff with the approximate putative class size, and beginning in June of 2022, the Parties began engaging in extensive settlement discussions. In November of 2022, the Parties agreed to continue their settlement negotiations at a Pre-Trial Settlement Conference with the Court. On January 20, 2023, the Parties participated in a settlement conference overseen by Magistrate Judge Jonathan E. Hawley, which was successful.

After the successful conference with Magistrate Judge Hawley, the Parties entered into an agreement in principle that they memorialized in a Settlement Agreement and Release that was fully executed on February 27, 2023. Plaintiff then moved for preliminary approval of the settlement (Dkt. 31), which was granted on March 23, 2023 (Dkt. 32). Plaintiff now seeks final approval of the Parties' settlement.

### III.   TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Settlement Agreement and Release, (Exhibit 1) and are briefly summarized here:

A. **The Settlement Class**

The Settlement Class includes all individuals working for Defendant in the State of Illinois who utilized Defendant's biometric timekeeping system and had their biometric identifiers and/or biometric information as defined under the Illinois Biometric Information Privacy Act, 740 ILCS 14/10, collected, captured, received, obtained, maintained, stored, transmitted, or disclosed by Defendant at any time from October 1, 2016 through March 23, 2023 and who did not timely opt-out of the settlement. ("Settlement Class"). Exhibit 1, ¶ 37. The total number of proposed Settlement Class Members was estimated to be approximately 510 individuals. *Id*. ¶ 5.

B. **Settlement Administration**

In accordance with the Court's preliminary approval order, the Parties retained Analytics Consulting, LLC ("Analytics"), an experienced class action claims administrator, to administer the Settlement. Exhibit 1, ¶ 33; *see also* Admin Decl. at ¶ 1. The Settlement Administrator's expenses will be paid from the Settlement Fund. On March 27, 2023, Defendant provided Analytics with a list containing 507 Class Members ("Class List"). Admin. Decl. at ¶ 4. The key components of the data set were Class Members' name, last known mailing address, and phone number. *Id*. After reviewing the Class List, Analytics determined that there were three duplicates and incomplete information for 38 of the Class Members. *Id*. Address information for 21 of the 38 incomplete records was provided by Defense counsel resulting in contact information for 491 of the 504 total Class Members. *Id*. The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *Id*.

On April 6, 2023, Notices were sent via First Class mail to 480 Settlement Class Members contained in the Class List. Admin Decl. at ¶¶ 5, 8. As a result of contact information provided

3

by Defendant's counsel, the Notice was sent to an additional 10 Class Members on April 10, 2023, and 1 other on April 14, 2023. *Id.* ¶ 5. The Notice advised the Settlement Class that they could submit an exclusion and/or objection postmarked by May 8, 2023. *Id.* ¶ 6. On or before April 4, 2023, Analytics designated a post office box with the mailing address Wirco BIPA Case, PO Box 2003, Chanhassen, MN 55317-2003, to receive requests for exclusion from Class Members. *Id.* ¶ 7. Analytics received two returned Notice Packets with forwarding addresses and promptly re-mailed to those updated addresses. *Id.* ¶ 9. Of the 491 mailed Notices, 183 were returned to Analytics as undeliverable without a forwarding address; by performing advanced skip traces Analytics was able to re-mail 70 to an updated address. *Id.* ¶ 10. On May 11, 2023, Analytics sent a text message Notice to 69 Class Members whose mailed Notice was returned as undeliverable and unable to be forwarded to an updated address. *Id.* ¶ 11. To date, 407 of the 504 total Class Members on the Class List received mailed and/or text message Notices, or 81%. *Id.* at ¶ 12. Analytics received zero objections, and only one request for exclusion. *Id.* at ¶¶ 13-14.

    **C.**    **Objections and Opt-Outs**

The Deadline to object or opt out of the Settlement was May 8, 2023. Admin Decl. ¶¶ 13-14. That deadline has now passed. Only one Settlement Class Member requested exclusion from the Settlement, and zero Class Members objected to the Settlement. *Id*.

    **D.**    **The Settlement Fund and Allocation**

The proposed Settlement will establish a Settlement Fund in the amount of $459,000.00. Exhibit 1, ¶ 40(a). The Settlement Fund shall be divided among members of the Settlement Class that did not opt-out, after deductions for court-approved Administrative Expenses paid to the Settlement Administrator, a Fee Award to Class Counsel, and a Service Award to the Class Representative. *Id.* ¶¶ 33, 40(d), 41. Checks to the Settlement Class Members shall remain valid

and negotiable for 120 days from the date of their issuance, and thereafter shall become void if not cashed within that time. *Id*. ¶ 46(c). After the expiration of the 120-day period, the Settlement Administrator shall transfer uncashed funds to the agreed-upon *cy pres* recipient. *Id*. ¶¶ 43, 46. The Parties seek final approval of the Employee Rights Advocacy Institute for Law & Policy as the *cy pres* recipient to receive any such remaining funds.

### E.    Release

In exchange for the relief described above, Settlement Class Members who do not exclude themselves will provide Defendant and the Released Parties, as defined in the Settlement Agreement, a full release of all claims which relate to or arise out of the allegations in the Complaint and which relate in any way to information that is or could be protected under BIPA or any other similar state, local, or federal law, regulation, or ordinance, or common law, regarding the collection, capture, receipt, maintenance, storage, transmission, or disclosure of biometric identifiers and/or biometric information that Class Members claim, might claim, or could have claimed in any court or administrative proceeding against the Released Parties and relating to Timekeeping Systems used by the Released Parties and any or all of their past or present parents of subsidiaries, and any other entities that could be jointly or severally liable for the claims. Exhibit 1, § VI.

### F.    Payment of Attorneys' Fees, Litigation Costs, and Service Award to the Named Plaintiff

Contemporaneous with this Motion, Plaintiff will apply for Court approval, and the Defendant will not oppose, distribution of a Service Award to the Named Plaintiff, paid out of the Settlement Fund, in the amount of $7,500.00. Exhibit 1, ¶ 67. In addition, Class Counsel will petition for approval of a Fee Award not to exceed 35% of the Settlement Fund, or $160,650.00, plus out of pocket costs not to exceed $650.00. *Id*. ¶ 64. These sums are fair and reasonable in

light of all of the facts and circumstances, including time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

## IV. THE PARTIES HAVE SATISFIED THE RULE 23 NOTICE REQUIREMENTS

Under Rule 23(c)(2)(B), notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23 (c)(2)(B). As set forth above and demonstrated by the thoroughness of the Notice, the Parties' efforts to effectuate notice by mail and text message to the Class Members meets the requirements of Rule 23(c)(2)(B). *See e.g.,* Admin Decl. at Exhibit A, Notice.

## V. THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE, AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFF'S CLAIMS

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). "In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts examine the fairness, reasonableness, and adequacy of a settlement in light of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores,*

6

*Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). As set forth in detail below, the proposed settlement is fair, reasonable, and adequate under Rule 23(e) and is a fair and reasonable resolution of a bona fide dispute over the provisions of BIPA and, thus, should be approved.

        A.        **The Settlement Is Fair, Reasonable, and Adequate.**

To approve a proposed settlement of a class action under Rule 23, a court's review of a settlement agreement is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196 (citations omitted); *see also EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). The Court's task is to evaluate "the general principles governing approval of class action settlements" and not the "substantive law governing the claims asserted in the litigation." *Isby*, 75 F.3d at 1197 (citation omitted).

However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)). Courts consider five factors: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727 at *2 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199.

### 1. The Settlement Amount is Substantial Given the Strengths of Plaintiff's Claims and Attendant Risks (First Factor).

Defendant has agreed to settle this case for $459,000.00 for a class of 503 employees. Exhibit 1, ¶¶ 5, 33, 40(a). The Settlement Fund shall be used to pay (i) Settlement Class Members' claims; (ii) a Service Award to the Class Representative ($7,500.00); (iii) the Fee Award ($160,650.00) and Litigation Costs ($617.93); and (iv) the Administrative Expenses ($7,475.00). This leaves a Net Settlement Fund of $282,757.07 and an estimated payment to each Participating Class Member of $562. Importantly, Settlement Class Members did not have to submit a claim form or otherwise "opt in" to the Settlement. Here, zero Class Members objected to the settlement and only one class member requested exclusion. Admin Decl. ¶ 17. This is a substantial settlement that represents significant value, particularly given the attendant risks of litigating the merits of the case through Rule 23 class certification, potential decertification proceedings, summary judgment practice and/or trial, and any appeals of decisions on those matters. Mitchell Aff. ¶ 15.

This is a meaningful monetary recovery, especially compared to other class action BIPA settlements that have received final approval:

| Case | Judge | Date | Class Size | Per Person Amount |
|---|---|---|---|---|
| *Torres v. Eataly Chicago, LLC,* 20-CH-06417 (Cook County) | Walker | June 8, 2021 | 218 | $389 gross |
| *Zhirovetskiy v. Zayo Group, LLC,* 17-CH-09323 (Cook County) | Flynn | Apr. 8, 2019 | 2,475 | $450 gross |
| *Sharrieff v. Raymond Mgmt. Co., Inc. d/b/a The Raymond Group,* 18-CH-01496 (Cook County) | Cohen | Apr. 8, 2019 | 485 | $500 gross |
| *Marshall v. Life Time Fitness, Inc.,* 17-CH-14262 (Cook County) | Tailor | Aug. 7, 2019 | 6,000 | $270 net[2] |

---

[2] The settlement also included dark web monitoring the parties valued at $130 per class member.

8

| *Rafidia v. KeyMe, Inc.*, 18-CH-11240 (Cook County) | Gamrath | June 5, 2020 | 2,117 | $515 net |
| *Prelipceanu v. Jumio Corp.*, 18-CH-15883 (Cook County) | Mullen | July 21, 2020 | Thousands | $262.28 net[3] |

The Settlement Agreement also represents a meaningful recovery when compared against average recoveries in class action settlements generally. *See In re Ravisent Techs., Inc. Sec. Litig.*, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

Here, the Settlement provides far more than a fraction of the potential recovery. The recovery here is well within the range of reasonable recovery and represents significant value given the attendant risks of litigation. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

In evaluating the strength of the plaintiff's case on the merits as compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Patterson*, 528 F.2d at 114 (collecting cases). Courts "have been admonished to refrain from resolving the merits of the controversy of making a precise determination of the parties' respective legal rights." *Hiram Walker*, 768 F.2d at 889. Because "[t]he essence of settlement is compromise," *Id*., courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200; *see also Armstrong v. Bd. Of*

---

[3] The settlement agreement and filings did not disclose the number of class members in this $7 million settlement or the ultimate net per person recovery. Class counsel's fee petition represented that "thousands" of class members had filed claims. Legal websites state that class members who submitted claims received up to $262.28 per person with a second distribution of $14.50. *See* https://topclassactions.com/lawsuit-settlements/lawsuit-news/illinois-jumio-biometric-class-action-settlement/ (last visited Apr. 20, 2021).

9

*Sch. Dirs. Of Milwaukee*, 616 F.2d 205, 315 (7th Cir. 1980) (noting that "the essence of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"). Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations omitted).

The outcome of this Action is far from certain. In addition to any defenses on the merits Defendant would raise, Plaintiff would also otherwise be required to prevail on a class certification motion, which is highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Settlement Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiff and the Settlement Class Members to receive meaningful and significant payments now, instead of years from now or never. *Id*. at 582.

While Plaintiff believes he would likely prevail on his claims, he is also aware that Defendant has expressed a firm denial of his material allegations and the intent to pursue several substantial legal and factual defenses, including but not limited to whether Plaintiff asserted an intentional or reckless BIPA violation sufficient to confer statutory damages. If successful, any of these defenses could result in Plaintiff and the proposed Settlement Class Members receiving no payment whatsoever. This risk is readily apparent, given the number of other legal and factual

10

issues that have gone untested to date without final controlling legal authority. Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Settlement Class Member in the Settlement represents a truly excellent result for the Settlement Class.

The proposed Settlement thus ensures that the Settlement Class Members will receive significant monetary relief and receive a settlement amount that is reasonable and consistent with the established facts as applied to the governing law. Weighing the benefits of the Settlement against the available evidence and the risks associated with proceeding in the Action, the settlement amount is reasonable. This factor therefore weighs in favor of final approval.

### 2. Litigation Through Trial Would Be Complex, Costly, and Long (Second Factor).

The Second Factor to be considered is the complexity, length, and expense of litigation that will be avoided by the proposed settlement, which also weighs in favor of final Settlement approval. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000). "As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). The Settlement here allows Settlement Class Members to receive immediate relief, avoiding lengthy and costly additional litigation.

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). What lies ahead would be years more of litigation at every phase of this case—all of which would pose the possibility of significant stumbling blocks for this Class. Although

Class Counsel believes Plaintiff's case is strong, it is subject to considerable risks and costs if the case is not settled.

Assuming that the Class would ultimately have been certified (and that Plaintiff would have defeated a summary judgment motion), the case would have proceeded to trial where the Parties are likely to litigate a horde of complex issues that are either still being resolved by the courts or are matters of first impression. *See, e.g., Pichlet v. UNITE,* 775 F. Supp. 2d 754, 759 (E.D. Pa. 2011) (approving class action settlement in light of the complexity of future litigation on issues of first impression). Again, although Plaintiff believes in the strength of his claims—a risk that Wirco evidently appreciated considering the Settlement it agreed to—further litigation poses risks on both sides.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The proposed settlement provides immediate benefits.

If litigation were to continue, extensive additional discovery and class discovery would be required to establish liability and damages. Here, further litigation would certainly result in several depositions, a fully briefed motion for Rule 23 class certification, potential decertification proceedings, and summary judgment practice on liability, and would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See*

*Isby*, 75 F.3d at 1199. On the other hand, "[s]ettlement allows the class to avoid inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. This factor therefore weighs in favor of final approval.

### 3. The Reaction of the Class Has Been Overwhelmingly Positive (Third Factor).

The absence of objections by Class Members is significant in determining whether the proposed settlement is reasonable to the class. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"). Here, zero class members objected to the settlement and only one requested exclusion. Admin Decl. ¶¶ 13-14. Thus, this factor also favors approval of the settlement.

### 4. Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982), quoting *Armstrong*, 616 F.2d at 325); *see also Isby*, 75 F.3d at 1200. However, they cannot rely solely on that opinion, *see Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014). Importantly, here, there is no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200. The settlement was reached after intense negotiation over the course of several months including a pre-trial settlement conference overseen by Magistrate Judge Jonathan E. Hawley. In short, it took the Parties considerable effort to reach the detailed terms of this Settlement now before the Court. Mitchell Aff. ¶¶ 11, 16.

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."

13

Herbert B. Newberg & Alba Conte, *Newberg of Class Actions* §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Class Counsel are competent and experienced in class actions and are familiar with the strengths and weaknesses of the claims and defenses. Mitchell Aff. ¶¶ 5-7, 16. Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel could make, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement. *Id.* ¶ 16. Simply put, Class Counsel believe that the Settlement is certainly in the best interest of the Settlement Class. *Id.* ¶¶ 15-16. First, the monetary relief provided far exceeds relief in many similar class settlements and similar BIPA settlements. Second, a recovery for the Settlement Class now is preferable to years of litigation and inevitable appeals with no guarantee of recovery. Lastly, the injunctive and prospective measures provided for in the settlement ensure that Class Members are protected going forward. This factor therefore weighs in favor of final approval.

### 5. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This complex class action was resolved over 1.5 years after it was initiated. This period involved exhaustive research, analysis, investigation, some formal discovery, the informal exchange of information, and extensive negotiations culminating in a pre-trial settlement conference with Magistrate Judge Jonathan E. Hawley. *See* Mitchell Aff. ¶¶ 9-11. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the Settlement. *Id.* at ¶ 16. Given the significant amount of time and resources spent by the Parties exchanging information and advancing settlement negotiations, this fifth factor favors final approval of the settlement.

### B. Approval of the Release of Class BIPA Claims Is Appropriate.

The Parties also request that the Court approve the release of Class Members' BIPA claims as defined in the Settlement Agreement. Exhibit 1, § VI. In this case, as explained above, the terms of the settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, and analysis. Because the Settlement, including Class Members' releases of their BIPA claims, resolves a bona fide dispute and was reached after vigorous arm's-length negotiations, it should be approved. *See, e.g.*, *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014).

### VI. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his Unopposed Motion and Memorandum in Support of Final Approval of Class Action Settlement and enter the Proposed Final Approval Order, attached as Exhibit 2.

Date:  June 21, 2023

Respectfully Submitted,

*/s/ Catherine Mitchell*
Ryan F. Stephan
Catherine Mitchell
**STEPHAN ZOURAS, LLP**
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
cmitchell@stephanzouras.com

David A. Neiman
**ROMANUCCI & BLANDIN, LLC**
321 North Clark Street, Suite 900
Chicago, Illinois 60654
312.458.1000
312.458.1004 f
dneiman@rblaw.net

Miranda L. Soucie, No. 6304049

15

          **S**PIROS **L**AW**, P.C.**
          2807 N. Vermilion, Suite 3
          Danville, IL 61832
          217.443.4343
          msoucie@spiroslaw.com

          **A**TTORNEYS FOR **P**LAINTIFF
          **AND THE S**ETTLEMENT **C**LASS

**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on June 21, 2023, I electronically filed the attached with this Court's CM/ECF system which will send notification of such filing to all attorneys of record.

*/s/ Catherine Mitchell*

17